[L. A. No. 2542. In Bank.—October 9, 1911.]

## ANN ETTA MAYR, Respondent, v. WALTER ALBERT MAYR, Appellant.

DIVORCE—ANSWER—OMISSION OF PRAYER FOR RELIEF—AMENDMENT IN-
CLUDING PRAYER.—The failure of an answer in an action for a divorce to contain any prayer for affirmative relief may be cured by an amendment thereto containing such prayer. In such case the court is justified in treating the answer and its amendments as one pleading.

ID.—CRUELTY—SUFFICIENCY OF PLEADING.—In such an action, the allega-
tions in the cross-complaint of the husband are held, in the absence of any special demurrer, to sufficiently show that the various acts of cruelty set forth therein were "wrongfully" inflicted.

ID.—FINDINGS—DENIAL OF DIVORCE—APPEAL.—Upon a review of the findings it is held that while the misconduct of the wife was much more serious than that of her husband, this court cannot say, on an appeal by him, that his acts were so venial as not to justify the trial court's denial of a divorce to him as well as to her.

ID.—REFUSAL OF MATRIMONIAL INTERCOURSE—DESERTION—JUST CAUSE
FOR REFUSAL.—A finding that the wife has persistently refused at all times to have reasonable matrimonial intercourse with her husband, although the health and physical condition of either party did not make such refusal reasonable or necessary, does not establish deser-
tion on her part, under section 96 of the Civil Code, entitling the husband to a divorce, in the absence of a finding as to whether or not just cause for such refusal exists.

ID.—ACQUIESCENCE IN REFUSAL.—A finding, in addition to the fore-
going, that the husband at all times "acquiesced" in such refusals, will be construed as meaning that he submitted thereto, and not that he approved thereof.

ID.—DENIAL OF DIVORCE FOR DESERTION—ALIMONY CANNOT BE GRANTED
WHEN SEPARATION IS BY AGREEMENT.—In an action in which each of the parties prays for a divorce on account of the alleged desertion

of the other, and the court finds that there has been no desertion by either and denies a divorce to both, for the reason that they had been living apart and had abandoned marital relations in pursuance of a mutual parol agreement so to do, the court has no power to render a decree awarding alimony to the wife.

ID.—AGREEMENT TO LIVE APART—DUTY OF HUSBAND TO SUPPORT WIFE.—While a husband and wife may, in the absence of grounds for divorce, agree to live apart, a mere verbal contract that they shall so reside will not place upon the husband the duty of supporting the wife while they are so living.

APPEAL from a judgment of the Superior Court of Los Angeles County. W. P. James, Judge.

The facts are stated in the opinion of the court.

Stephens & Stephens, for Appellant.

Earl Rogers, and Paul W. Schenck, for Respondent.

MELVIN, J.—This appeal, founded on the judgment-roll alone, is taken by defendant as cross-complainant from a judgment denying a divorce to him. As a part of the judgment plaintiff and cross-defendant was awarded one hundred and fifty dollars a month for the support of herself and her minor child, although she also was denied a divorce upon her complaint and proof.

Appellant contends that the court below had no power to enter a decree for alimony under the facts of the case as found, and that upon the findings the cross-complainant was entitled to a decree of divorce on the grounds of cruelty and of desertion, the latter consisting in the refusal of plaintiff to have reasonable matrimonial intercourse with him. Respondent contends that the cross-complaint lacks the essential allegation of marriage; that the answer and its various amendments do not contain any prayer; and that there is no averment of the "wrongful" infliction of any of the alleged acts of cruelty. It appears, however, that after the filing of the written opinion of the judge who tried the case, but before the formal findings had been made, leave of court having been obtained, an amendment to the cross-complaint was filed, whereby the marriage of the parties and their *status* as husband and wife are sufficiently set forth. While the answer first filed contains no

prayer for affimative relief, one of the amendments thereto does contain such prayer. We think that the court was justified in treating the answer with its various amendments as one pleading. The cross-complaint contained allegations amounting to the assertion that the various acts of cruelty set forth therein were "wrongfully" inflicted. We find in the cross-complaint the averment: "That all of said acts of plaintiff as aforesaid were, as defendant is informed and believes, done by her with the express purpose and object of harassing defendant and inflicting upon him intense mental torture and suffering, and that such objects and purposes of plaintiff were fully accomplished." There is also the statement that previous to the summer of 1904, "the plaintiff had resolved to so conduct herself towards the defendant as to compel a separation between them, to render his life miserable, and if possible to force him into the appearance of desertion of her." And after setting forth the narration by plaintiff to defendant of certain alleged improprieties committed by her in South Dakota and elsewhere, the cross-complaint contains the assertion: "That the recitals by plaintiff to defendant of all the said facts as aforesaid caused the defendant, and were intended by the plaintiff to cause the defendant, great mental suffering and distress; that plaintiff has in almost every respect failed to conduct herself as a loving and dutiful wife should, but has done and said innumerable things which cannot now be specifically recalled by the defendant, with the intention and purpose of continually harassing and annoying defendant, and that such was the general course of treatment of defendant by plaintiff." We think that in the absence of special demurrers the allegations of the answer and cross-complaint were sufficient. There were no demurrers of any kind to any of the pleadings.

The complaint charged defendant with cruelty and desertion. The findings set forth the marriage of the parties; and the birth of their child on or about May 2, 1905. They also negative certain allegations respecting the sale of defendant's property and the concealment of the proceeds. Defendant's earning capacity is found to be two hundred and fifty dollars per month, and there is a further finding that since coming to California he has not earned enough within seven thousand dollars to pay the expenses of himself, plaintiff, and their

child and to meet the costs of this litigation. There are further findings that there is no community property; that plaintiff has four thousand dollars worth of furniture left in her possession by defendant when he removed to California about April, 1906; that plaintiff is an educated musician, capable of earning her living as a teacher of music, but that her resources are insufficient for the support of herself and child, and that one hundred and fifty dollars per month is a proper sum to be paid her for that purpose. There are also findings against various allegations of cruelty in the complaint, and while some of the acts charged against the defendant are found to be true, the court finds that none of them was done with intent to inflict cruelty upon plaintiff, and that his acts did not cause her grievous bodily or mental suffering; and that these acts did affect plaintiff's peace of mind, but not to any grievous degree. The court also finds that defendant did not desert plaintiff, but that on April 1, 1906, he separated himself from plaintiff, and that they have not since that time dwelt in the same house. It is found, however, that this living apart was agreeable to plaintiff and was with her consent. With reference to the averments of the cross-complaint, it may be said that most of them are found to be true. Among these findings were those to the effect that plaintiff was disinclined to domestic life; that against defendant's will she went with a company of professional musicians, remaining away from home about three months; that she abstracted a draft for fifty-five dollars from defendant's mail, forged his endorsement thereon, cashed the draft and used the money for a trip to the Adirondacks; that she refused to accompany defendant on a business trip to the Atlantic Coast, but went instead to South Dakota remaining from a time in July, 1904, to September 12, 1904; that on her return to Chicago (then the home of the parties hereto) she told of a romantic acquaintance with one Joseph Gahm, whom she had met in South Dakota; that she had tried in various ways to induce defendant to divide his property with her, and had commenced suit against him in Illinois for maintenance and support; and that she had wrongfully taken certain letters and documents belonging to defendant and intended for use as evidence in this case, and had refused to give them up until her own counsel had threatened to withdraw from the case

unless she surrendered them.    There is also this finding: "The conduct of the plaintiff herein found has for many years embittered the life of the defendant, and has destroyed his peace of mind, seriously impaired his health, and caused him grievous mental suffering and physical pain.    But the conduct of the defendant toward the plaintiff has been censorious and not duly considerate, and of a kind calculated to cause such conduct on the part of plaintiff as is hereinbefore described."    While plaintiff's conduct was highly reprehensible, and while the dates of her departure for and return from South Dakota, when compared with the birth of her child, might throw grave doubt upon its paternity (although the court found that defendant was the child's father) there are other findings which justify the court's conclusion that defendant's conduct was inconsiderate.    He informed his wife that "he would regard her death with satisfaction," and the court also found that "for many years before the separation of said parties the defendant was very irascible and often displayed great ill-temper and ill-feeling toward the plaintiff, and treated her with unkindness."    Shortly before the birth of the child, after a quarrel in which his wife had asked him to divide the property, defendant went away from home, telling plaintiff on his departure that she had "pulled his leg" for the last time.    While the findings, when examined in detail, would indicate that plaintiff's misconduct was much more serious than that of her husband, we cannot say that his acts were so venial as not to justify the court's denial of the divorce to him as well as to her.

Appellant contends that the finding with reference to persistent refusal to have reasonable matrimonial intercourse is sufficient of itself to establish desertion under section 96 of the Civil Code.    That section provides that: "Persistent refusal to have reasonable matrimonial intercourse as husband and wife, when health or physical condition does not make such refusal reasonably necessary, or the refusal of either party to dwell in the same house with the other party, when there is no just cause for such refusal, is desertion."    The finding on this subject in the case at bar is that the plaintiff did not "at any time separate herself from the defendant with the intent to desert him.    Since a time on or about the fourteenth day of September, 1904, the plaintiff has persistently refused at all

times to have reasonable matrimonial intercourse with the defendant as husband and wife, although the health and physical condition of either party did not make such refusal reasonable or necessary; but the defendant at all such times acquiesced in such refusal of the plaintiff." If this were a new question we would be inclined to agree with appellant; but it will be noticed that there is no finding whether or not just cause for such refusal exists. *Fink* v. *Fink,* 137 Cal. 559, [70 Pac. 628], is authority for the insufficiency of such a finding. Personally the writer of this opinion would incline to an interpretation of the statute whereby the words "when there is no just cause for such refusal" would apply only to the refusal of either party to live in the same house with the other. But *Fink* v. *Fink,* 137 Cal. 559, [70 Pac. 628], seems to have settled the law the other way. The finding just quoted appears somewhat difficult at first glance to understand. Persistent refusal on the part of one spouse to have reasonable matrimonial intercourse with the other involves a continued willingness on the part of the one refused. "Acquiescence" to such refusal cannot therefore mean "approval." It can only be used in the sense of "submission." So employed it is easily understood. The court found that in April, 1906 (nearly two years after the refusal of plaintiff to have matrimonial intercourse with him) defendant ceased to dwell in the same house with plaintiff, "but such separation was agreeable to plaintiff and was consented to by her." There are findings also that plaintiff did not "at any time separate herself from the defendant with the intent to desert him," and that defendant did not "at any time or place desert or abandon the plaintiff, nor has he without cause or at all refused or neglected to live with the plaintiff as her husband." Taken altogether and construed in the light most favorable to respondent, these findings merely show a mutual agreement by plaintiff and defendant to live apart and abandon marital relations. Does such mutual agreement carry with it the implication that the husband will continue to provide for the wife, and may the court, in the face of such agreement, when a divorce is denied to both parties, compel the husband to support the wife? We think not. While a husband and wife may, in the absence of ground for divorce, agree to live apart. a mere verbal contract that they shall so reside will not place upon the man

the duty of support. Section 159 of the Civil Code provides that "A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and except that they may agree, in writing, to an immediate separation, and may make provision for the support of either of them and of their children during such separation." In *Volkmar* v. *Volkmar*, 147 Cal. 175, [81 Pac. 413], the rule was thus expressed: "In no case should a court decree permanent alimony to the wife living separate and apart from her husband, in the absence of facts showing an obligation on the part of the husband to support her under such conditions. The effect of the decree here is to compel the husband to support the wife while she continues to live separate and apart from him. It is not intimated by the findings in this case that the original separation between these parties was due to any fault of the plaintiff's husband. The wife, it is true, is found, in response to the allegations of the complaint, not to have deserted the husband, but it was not found, nor was it claimed by the answer, that the husband had deserted the wife; nor was it found that he had been guilty of willful neglect, cruelty, or any other misconduct. So far as appears, they simply voluntarily separated on December 9, 1901, and have since been living separate and apart. Although it is found that she has been ready and willing at all times to live with him as his wife, it is not found that she ever communicated her readiness and wishes in this regard to him, or that he has ever refused to allow her to live with him. If the wife was not guilty of desertion, and was ready and willing to live with the husband, and in good faith offered so to do, and he refused her offer, there would have been some ground for a claim that he had been guilty of desertion, warranting the relief given (Civ. Code, sec. 101). But the findings present no such case, and we doubt whether the issues made by the pleadings were broad enough to warrant a finding of desertion on the part of the husband, had one been made. A wife living separate and apart from her husband cannot, in the absence of special agreement therefor, compel him to support her while living so separate and apart, unless such separation is caused by misconduct on his part. The obligations arising from the contract of marriage are mutual. It is as much the duty of the wife to live with the husband as it is his duty to support her, and

the duty of support will not be enforced against the husband in favor of the wife, who, without cause, fails to perform the correlative duty of living with him.    (See *McMullin* v. *Mc-Mullin,* 123 Cal. 653, [56 Pac. 554] ; Civ. Code, sec. 175.) What misconduct on the husband's part would justify a court in requiring him to support his wife while she continues to live apart from him, it is, as already said, not necessary here to consider, for no reason at all why the wife does not return to her husband appears in the facts found by the trial court. It may, however, be said that it has been held that under our statute an action for permanent maintenance, independent of any suit for divorce, can be maintained by a wife only where the husband has been guilty of acts constituting willful desertion on his part.    (*Hardy* v. *Hardy,* 97 Cal. 125, 127, [31 Pac. 906].)"

The facts in the case at bar are stronger in favor of appellant than those shown by the record in *Volkmar* v. *Volkmar,* 147 Cal. 175, [81 Pac. 413]. As in that case, there is no finding that the original separation was due to the husband's fault, but differing from that case we have here the persistent and unreasonable refusal of the wife to sustain proper marital relations with her husband, long preceding any change of domicile on his part; and although the final breaking up of the home may have occurred through mutual assent, the only overt and unreasonable act, according to the findings, was hers.

From the foregoing it follows that the judgment should be amended by striking out that portion of it whereby Walter Albert Mayr is required to pay to the plaintiff Ann Etta Mayr on the first day of each month following the entry of the said judgment the sum of one hundred and fifty dollars for the support and maintenance of the said plaintiff and of Josefi Hardin Mayr, the minor child of the parties to this action, and it is so ordered.

Henshaw, J., Lorigan, J., Shaw, J., Angellotti, J., and Sloss, J., concurred.

Rehearing denied.