[Civ. No. 13615.   First Dist., Div. One.   Feb. 24, 1948.]

MARGARET FALLON, Respondent, v. FREDERICK A. FALLON, Appellant.

John G. Reisner for Appellant.

Jack Flinn and John A. Foley for Respondent.

BRAY, J.—Plaintiff sued defendant to enforce an ante-nuptial agreement and for divorce on the grounds of extreme cruelty. Defendant, besides answering, cross-complained for divorce on the grounds of both cruelty and desertion. At the trial, the court granted defendant's motion for a nonsuit on both causes of action. The trial then proceeded on the single cause of action for desertion alleged in the cross-complaint, as the defendant elected not to proceed on the other ground. At the conclusion of the trial, the court denied a divorce and ordered defendant to pay plaintiff $250 per month for a period of one year, and the further sum of $500 counsel fees.

Defendant contends that the evidence showed without conflict a cause of action for desertion, and hence the court erred in denying the divorce, and also in granting the support and counsel fees award.

### Desertion

While the evidence establishes the fact that plaintiff left defendant and remained away for more than the statutory period, the court found, in effect, that such separation was with the consent of defendant. The evidence supports that conclusion.

To understand the circumstances of the separation it is necessary to consider briefly the background of the marriage, which indicates that it was little more than a mutual business proposition and not guided by the usual lofty motives which prompt individuals to unite in wedlock. The marriage took place in Reno in 1940, at which time plaintiff was 32 years of age and defendant 71. Defendant owned considerable property and was wealthy. Plaintiff is a practical nurse, and in October, 1938, started to take care of defendant, who was in ill health. After a few months plaintiff occupied a bedroom in the flat where defendant lived so that she would be available whenever needed. Several of the

apartments in the building which was owned by defendant were dirty and unoccupied. In addition to nursing and caring for defendant, plaintiff did all the housework, cooking and washing, cleaned up defendant's flat and made it livable. She also made the vacant apartments rentable, painting them and doing considerable other work herself. As a result of her efforts in this respect, defendant's income was increased $200 per month by the rentals. About seven months after plaintiff was employed, defendant started proposing marriage to her, repeating the proposal every month or two. She testified that he offered certain sums of money and the inducement that by marrying him she could more easily obtain citizenship, as she was a subject of New Zealand. An antenuptial agreement was drawn up which was to be effective only when signed in the presence of defendant's attorney. As it was never signed by either of the parties, the cause of action based upon it fell.

Defendant paid plaintiff $21 per week for her services. In November, 1942, defendant's manager left and plaintiff took over the position and received $50 per month therefor. These payments continued after the marriage, plus the rental of an apartment which defendant permitted plaintiff to retain, so that at the time of separation plaintiff was receiving approximately $200 per month. Out of this sum, plaintiff had to pay for her own clothes, personal expenses, and presumably amusement.

Plaintiff testified that defendant was of a quiet temperament, uncommunicative, would run away, close himself up in his room, had moody spells, would not let her drive the car, never took her to a show or allowed her any company or social life. Every night he would leave the dinner table, go to his room to listen to the radio, read, or study, and at 10 o'clock would lock his room door. Sometimes he would not talk and would lock himself away from plaintiff. If she stayed home at night he would never say anything to her. Apparently, although she did not testify as to why she left defendant, plaintiff became fed up with the situation, filed a suit for divorce, continued to live with him for four months, and then left home. Plaintiff admitted that the habits, ideas, and actions of defendant before marriage, with which she was thoroughly familiar, were practically the same as those after marriage.

After the court denied plaintiff a divorce on the grounds

of cruelty, defendant took the stand. It is his testimony, backed by that of a witness, who merely corroborated the fact that plaintiff moved out and that the parties remained separated for over a year, that defendant contends is sufficient to require a finding of desertion by plaintiff. Defendant testified that on February 23, 1945, plaintiff had an express man remove her belongings and trunk and moved to an apartment about six blocks away. When asked what the conversation was at the time of leaving he said there was very little conversation. "It was understood about the last week of October of the preceding year that she intended to get a divorce, and the circumstances were such that she had a difference of opinion with one of the tenants as to who should control the apartments there . . ." This referred to a situation as to which plaintiff had testified that defendant had hurt her by taking the side of the tenant and plaintiff had said to him, "if that is the way you are going to be, and you can't stand up for me, I am not wanted around" or something to that effect. After leaving she visited him half to a dozen times to collect alimony and the last time to get some of her belongings. The court then asked: "Q. Well, did you ask her to come back? A. No, there was no conversation on the subject at all. I think the statutory period had already passed. . . . Q. Did you want her to come back? A. I told her when it was all over that it was all right for her to come back and take care of me in the apartment there. Q. After what was all over? A. After the law suit was all over, but I don't think I made any overtures for her to come back and live with me as my wife, nor did she make any, except for two letters. Shall I testify as to that, Mr. Reisner? MR. REISNER [counsel for defendant] : That is all right. A. She did make overtures after the statutory period had passed, she specified that there should be some agreement, we didn't specify what the terms of that agreement should be, and the peculiar thing was that when she called in person, she did not mention the subject at all and it was out of my mind." On June 7, 1946, over a year after the suit was filed but before trial, plaintiff wrote defendant a letter in which she stated, among other things: "Also on leaving San Francisco, you will recall my telling you I am willing to return home, if you want me to, providing we could come to some agreement between you and I. I don't think in any event that we need any lawyers, Fred, surely you and I can settle this matter

without them.'' Again in September, 1946, she wrote defendant, evidently referring to this June 7th letter: ''While I am down here just for the change and a job, I want you to know that I meant what I told you before I went east in June, Fred . . . that I am willing to come home to you, that is if you want me, and you make an agreement whereas we will both be satisfied, I think that is the fairest way.'' Referring to the time of plaintiff's leaving, defendant was asked: ''Q. Did you ask her to become reconciled? A. No, it didn't occur to me. . . . Q. Did you do anything to make it pleasant, so she would stay? A. Not that I can remember, no. It was sort of useless.'' He also testified that he never asked her to stay. When asked ''Did she leave you home against your will and without your consent?'' he answered ''About everything she did was against my consent in that period . . .'' (leaving the sentence unfinished). Defendant also testified that he understood that she was going to leave, yet he at no time discussed with her the matter of leaving or asked her not to leave. The defendant at no time positively testified that her leaving him was without his consent, the above extract being the nearest he came to so testifying. It is apparent from the record as a whole that the trial court was justified in finding, in effect, that the separation was not against his consent but was mutually agreeable. Plaintiff was leaving to get away from a situation that was intolerable to her. At that time she had on file a divorce suit against defendant which she had filed on November 1, 1944. However, she continued to live with defendant thereafter until February 23, 1945, and did not proceed with her action for 14 months thereafter, when she filed an amended complaint, and did not bring the case to trial for another 14 months. As shown by her letters, she was willing to come back provided a mutually agreeable agreement could be reached. Defendant was unwilling even to discuss a possible basis for return.

While the offers to return expressed in the letters were conditional and upon terms not stated, and were after the passage of a year from plaintiff's departure, and hence defendant was not obliged under the law to accept the offer (*Stacy-Judd* v. *Stacy-Judd*, 93 Cal.App. 465 [269 P. 561]), they, when considered with the other actions of the parties, sustain the position that the separation by plaintiff was not with the intent to desert defendant, and that such separation was not without defendant's consent.

Defendant cites certain cases such as *Kirkpatrick* v. *Kirkpatrick*, 152 Cal. 316 [92 P. 853]; *Vileta* v. *Vileta*, 53 Cal. App.2d 794 [128 P.2d 376]; and *Dee* v. *Dee*, 87 Cal.App. 17 [261 P. 501], as authority for the proposition that where the evidence clearly and without conflict sustains a cause of action, the court cannot arbitrarily deny a decree. There can be no quarrel with that principle of law, but it does not apply here, for the reason that the evidence fails to sustain the desertion cause of action. The following sections of the Civil Code are pertinent here: (§ 95.) "Wilful desertion is the voluntary separation of one of the married parties from the other with intent to desert." (§ 96.) ". . . the refusal of either party to dwell in the same house with the other party, when there is no just cause for such refusal, is desertion." (§ 99.) "Separation by consent, with or without the understanding that one of the parties will apply for a divorce, is not desertion." (§ 130.) "No divorce can be granted upon the default of the defendant, or upon the uncorroborated statement, admission, or testimony of the parties . . .; but the court must, in addition to any statement . . ., require proof of the facts alleged, and such proof, if not taken before the court, must be upon written questions and answers."

Defendant's evidence toward establishing a cause of action for desertion would appear to be weak. He did not testify to any conversation indicating an intent to desert, and the only evidence on the point is the fact that she did leave. He did not protest her leaving or object in any manner. Since plaintiff had four months previously filed a complaint for divorce all indications would seem to be in favor of a separation by consent. In any event, there was insufficient corroboration to support a cause of action in favor of defendant as his witness, in effect, merely testified that the parties had separated and were living apart. In *Sweet* v. *Sweet*, 64 Cal.App. 786 [222 P. 634], plaintiff testified that his wife left him against his will and without his consent, that he knew of no particular reason why she left, only that she did not want to live with him. The corroborating witness merely testified to the fact that the parties were living apart and that the separation occurred by reason of the wife moving to and living in another city. In refusing a divorce on the ground of desertion, the court stated: "There was not a particle of corroboration and in fact there was no direct testimony that when the wife left the domicile she did so

'with intent to desert.' (Civ. Code, § 95.)'' (P. 788.) Quoting from *Corder* v. *Corder* (N. J.), 59 A. 309, the opinion continued: ''The corroboration of the petitioner as to the fact that subsequent to the separation the wife lived alone is not a sufficient corroboration of the desertion charged.'' (P. 789.)

*Hatton* v. *Hatton*, 136 Cal. 353 [68 P. 1016], held that the findings of the trial court will not be disturbed upon appeal unless the evidence in support of them is so slight as to indicate a want of good judgment and an abuse of discretion, and this rule is particularly applicable when the findings are against a divorce. ''To justify a reversal of the trial court in refusing to grant a divorce, the record should show a great preponderance of evidence against the findings . . .'' (P. 356.)

Concerning separation by consent, the following pertinent and seemingly applicable statement is found in 9 California Jurisprudence, page 669: ''The consent need not be expressed in writing, or even expressed in words, but it may be implied from the circumstances of the case. As has been stated, 'It may be implied from the failure of the parties to make overtures after a quarrel; from acquiescence in the separation; or from other circumstances which show the plaintiff's consent or that the separation was not against her will. The consent need not be express. It may be tacit, as where the plaintiff is willing and has made no objection.' [Citing *McMullin* v. *McMullin*, 140 Cal. 112, 115 [73 P. 808], quoting Nelson on Divorce and Separation, § 67.] It is for the court trying the case to determine from all the facts and circumstances appearing therein whether or not there was an absence of that consent to living separate and apart which is essential to constitute a desertion . . .''

### *Award for Support*

■ There are no children of the marriage and no community property. According to the evidence, the defendant is worth at least between $300,000 and $400,000 with a net yearly income of not less than $8,500, while plaintiff is employed in her profession as a practical nurse. After the filing of the suit plaintiff received $200 per month for support under court order, until about two months before the trial, when the order was set aside. At the end of the trial the court at first refused to make any allowance, but on being shown section 136 of the Civil Code made an order granting

plaintiff support in the sum of $250 per month, for the limited period of one year.

Defendant contends that the court had no power to make this allowance as there was no showing of need therefor on the part of plaintiff, and cites in support of this position *Peyre* v. *Peyre,* 79 Cal. 336 [21 P. 838]; *Loeb* v. *Loeb,* *(Cal. App.) 185 P.2d 42; *Lampson* v. *Lampson,* 171 Cal. 332 [153 P. 238]; *Volkmar* v. *Volkmar,* 147 Cal. 175 [81 P. 413]; and *Mayr* v. *Mayr,* 161 Cal. 134 [118 P. 546]. All these cases, however, referred to awards of *permanent* alimony or awards under section 137, and not to temporary awards under section 136 of the Civil Code, which reads as follows: "Though judgment of divorce is denied, the court may, in an action for divorce, provide for the maintenance by the husband, of the wife and children of the marriage, or any of them." In *Bensen* v. *Bensen,* 20 Cal.App. 462 [129 P. 596], the court mentions section 136 but states that as to any reason for the application of that section and section 137 "we are left completely in the dark as to whether the parties are living together or separate . . ." (P. 464.)

In *Broad* v. *Broad,* 35 Cal.App. 646 [170 P. 658], the court held that a wife living separate and apart from her husband, although not entitled to a divorce, was entitled to be supported by him while such separation existed, even though "her conduct toward her husband had been cold and indifferent." (P. 649.) In *Hagle* v. *Hagle,* 68 Cal. 588 [9 P. 842], an award of maintenance under section 136 was held not to be an abuse of discretion where the court found "that while defendant was not guilty of anything amounting to legal cruelty, . . . nevertheless his conduct as a husband was cold, harsh, and disagreeable, making it unpleasant for the plaintiff to live with him; that the wife's conduct was not free from blame; that the marriage had been unhappy from the beginning; that the wife was a good many years older than her husband, and love or affection no longer existed between them; that at the time of their marriage the woman was hard-working . . ." and each had about the same amount of money and the greater part of the property was community.

In *Jacobs* v. *Jacobs,* 68 Cal.App. 725 [230 P. 209], in which a hearing was denied by the Supreme Court, permanent alimony was granted the wife, although a divorce was

---

*A petition for rehearing was granted on November 6, 1947, and the final opinion is reported in 84 Cal.App.2d 141 [190 P.2d 246].

denied to both husband and wife. It is apparent from section 136 of the Civil Code and the cases that whether an award will be granted for support of the wife where a divorce is denied, depends on the circumstances of each case and the sound discretion of the court. Under the circumstances of our case, in view of the services rendered the husband in managing his properties while they lived together, and the comparison of his position with hers, we cannot say that the court abused its discretion. The court left the parties still married, although separated by consent, and it was not unreasonable to require defendant for the limited period of one year to support her in a style commensurate in some degree to his income.

### Counsel Fees

■ The court granted an additional sum of $500 attorney's fees. At the opening of the trial, plaintiff moved for an allowance for attorney's fees. The court stated: ". . . the motion is made and due consideration will be given to it later." No objection was raised to the court thus postponing determination of the matter. The services for which additional fees were asked were not past services, but those to be furnished during the trial and particularly in connection with the trial of the issues raised by the cross-complaint. In *Westphal* v. *Westphal*, 122 Cal.App. 388 [10 P.2d 122], the court held (p. 390) "that the law does not require a wife to have recourse to her own resources first, to the impairment of the capital of her own separate estate." An award of $1,500 for counsel fees for defense against the cross-complaint was sustained, even though the wife had separate property of the value of $15,000 from which she derived an annual income of $500, where the husband had an income in excess of $2,500 per month. The allowance of counsel fees is a matter within the sound discretion of the trial court. (*Heck* v. *Heck*, 63 Cal.App.2d 470 [147 P.2d 110].) It cannot be said that the court in the case at bar abused its discretion in making the allowance for additional counsel fees.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 22, 1948. Edmonds, J., Traynor, J., and Schauer, J., voted for a hearing.