[Civ. No. 20828. First Dist., Div. Two. Jan. 28, 1964.]

RITA JUDD MACK et al., Plaintiffs and Appellants, v. THE STATE BOARD OF EDUCATION, Defendant and Respondent.

Marshall W. Krause for Plaintiffs and Appellants.

Stanley Mosk, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Defendant and Respondent.

AGEE, J.—The State Board of Education revoked the teaching credentials of petitioners Rita Judd Mack and William Noble Mack, who are husband and wife, on the ground that, in obtaining their credentials, each had sworn falsely to the loyalty oath required by the Levering Act (Gov. Code, §§ 3100-3109).

Petitioners thereupon applied for and obtained an alternative writ of mandate issued by the superior court, ordering said board to restore the credentials or show cause why it should not do so. Following the judicial review provided for by section 11523 of the Government Code and section 1094.5 of the Code of Civil Procedure, the superior court ordered the alternative writ dissolved and the petition for a peremptory writ of mandate denied. Petitioners have appealed from the ensuing judgment.

That part of the oath pertinent herein is as follows: "[T]hat within the five years immediately preceding the taking of this oath (or affirmation) I have not been a member of

any party or organization, political or otherwise, that advocated the overthrow of the Government of the United States or of the State of California by force or violence. ..."

 Mack took the oath on August 15, 1958, and his wife took it on September 20, 1958. Both had been members of the Communist Party of the United States during and prior to that portion of the five-year period preceding March 1957, at which time each withdrew from said party and terminated such membership. The period under inquiry therefore is from August 1953 to March 1957.

The hearing officer assigned to hear the accusations against petitioners prepared a proposed decision, as required by section 11517, subdivision (b), of the Government Code. The following findings of fact are included therein: "(4) The Communist Party is, and was at all times herein mentioned, an organization which advocates the overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means. (5) Respondent [Rita Judd Mack] knew, at the time she signed said oath of allegiance on September 20, 1958, that the Communist Party, during the period of her membership, was an organization which advocated the overthrow of the government of the United States by force and violence or other unlawful means." The same findings were made with respect to the accusation against William Noble Mack.

The board adopted these findings and the superior court, exercising its independent judgment on the evidence, determined that they "are supported by the weight of the evidence received at the hearings before the said respondent [board]." (Code Civ. Proc., § 1094.5, subd. (c).)

There is no evidence that either petitioner ever personally advocated the use of any force or violence. Both testified at the hearing that they were attracted to communism because of their interest in social problems and their then belief that communism was the best way in which to meet these problems. Both asserted that they did not know nor did they believe that said party advocated the overthrow of our government by force or violence. Both testified that they gradually became disenchanted with the party and that its complacency toward the ruthless suppression by the Soviet Union of the revolt in Hungary "triggered" the termination of their membership.

*Judicial notice.* Section 11515 of the Government Code allows the hearing officer and the board to take official notice of

"any fact which may be judicially noticed by the courts of this State."

■ Judicial notice is a kind of evidence (Code Civ. Proc., § 1827, subd. 1) and may be relied upon to contradict other evidence and to support findings of fact and a judgment based thereon. (*Del Bosque* v. *Singh,* 19 Cal.App.2d 487, 489 [65 P.2d 951].) ■ "Under the doctrine of judicial notice certain matters are assumed to be indisputably true, and the introduction of evidence to prove them will not be required. Judicial notice is thus a substitute for formal proof." (Witkin, Calif. Evidence, "Judicial Notice," 56.)

The hearing officer stated in his proposed decision herein that he was taking judicial notice of the fact that "the Communist Party is, and was at all times herein mentioned, an organization which advocates the overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means."

The board adopted the proposed decision as its own and the superior court, in its findings and conclusions, specifically approved this application of the doctrine of judicial notice. There was thus included in the evidence considered by the hearing officer, the board, and the superior court that which was added by judicial notice.

In *Communist Party* v. *Peek,* 20 Cal.2d 536 [127 P.2d 889], the existence of the same alleged fact involved herein was held not to be the subject of judicial notice. This case was decided in 1942. Chief Justice Gibson, speaking for a unanimous court, stated: "[D]efendants urge that this court can take judicial notice of the fact that the Communist Party advocates the overthrow of the government by force and violence. The doctrine of judicial notice was adopted as a judicial short-cut to avoid necessity for the formal introduction of evidence in certain cases where there is no real need for such evidence. Before a court will take judicial notice of any fact, however, that fact must be a matter of common and general knowledge, well established and authoritatively settled, not doubtful or uncertain." (P. 546.)

The court quotes with approval from *Varcoe* v. *Lee,* 180 Cal. 338, 344 [181 P. 223], to the effect that " 'if there were any possibility of dispute,' " the fact cannot be judicially noticed. Also, that " 'the power of judicial notice is as to matters claimed to be matters of general knowledge one to be used with caution. If there is any doubt whatever either as to

the fact itself or as to its being a matter of common knowl-
edge evidence should be required.' " (P. 547.)

The court then concluded as follows: "Tested by these
standards, the doctrine has no place in the present case. Not
only do plaintiffs vigorously assert that the Communist
Party does not advocate force and violence, but the decided
cases have definitely demonstrated that the fact here alleged
to exist is not the subject of judicial notice." (P. 547.)

The holding in *Peek* is controlling here unless it can be
said that, since that decision, the common and general knowl-
edge has increased to such an extent that the doctrine of
judicial notice may now be applied to the period involved
herein.

The board calls attention to the legislative findings included
in two state and two federal statutes which were enacted
since *Peek.* (Ed. Code, § 12600, added by Stats. 1953, ch.
1632, § 1, and renumbered as § 12951 by Stats. 1959, ch. 2;
Gov. Code, § 1027.5, added by Stats. 1953, ch. 1646, § 1; In-
ternal Security Act of 1950, 64 Stat. 987, 50 U.S.C.A. § 781;
Communist Control Act of 1954, 68 Stat. 775, 50 U.S.C.A.
§ 841.)

These legislative findings are stated by Chief Justice Gib-
son to characterize the Communist Party as "a continuing
conspiracy against our government." (*Board of Education*
v. *Mass* (1956) 47 Cal.2d 494, 498 [304 P.2d 1015].)

█ There is no doubt that legislative investigations and
findings, as well as judicial decisions, have greatly increased
our knowledge of the principles advocated by the Communist
Party. However, we do not believe that such knowledge has
increased to the point where we can now say that it is a
matter of common and general knowledge, *certain and indis-
putable,* that the Communist Party of the United States ad-
vocated the forceful overthrow of our government during the
period of 1953 to 1957. (See Witkin, *supra,* p. 65.)

The effect of a legislative finding on this subject is consid-
ered in *Peek, supra,* wherein the court made the following
statement (pp. 548-549) : "It is said that this implied legisla-
tive finding, even though on a controversial issue, is binding
on the courts. To state the contention is to refute it. ... The
Legislature ... is without power to determine that a particu-
lar person or group has advocated the doctrine which violates
the policy laid down in the statute. If the statute be inter-
preted to include the implied finding here in question, as
contended by defendants, it would mean that the Legislature

had determined that a special group had violated the general policy of the statute. Such legislation would clearly be unconstitutional. ... So, while it was clearly within the legislative power to determine that, in the public interest, any party advocating the forceful overthrow of the government of the United States should be denied a place on the ballot, it is not within the power of the Legislature to determine that the Communist Party advocates the doctrine in question.''

It was incumbent upon the board herein to prove by the greater weight of evidence that petitioners were, at some time during the five years immediately preceding the taking of their oaths, members of a party or organization that was then advocating the overthrow of the government by force or violence. We are of the opinion that the proof in this case cannot be enlarged by the inclusion of evidence of the kind described in section 1827, subdivision 1, of the Code of Civil Procedure as '' [t]he knowledge of the court.''

It was error for the hearing officer, the board, and the superior court to take judicial notice, as they admittedly did, *of the ultimate fact in dispute,* namely, that ''the Communist Party is, and was at all times herein mentioned [1953-1957], an organization which advocates the overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means.''

We do not hold that evidence of legislative findings and judicial decisions bearing upon such ultimate fact may not be supplied under the doctrine of judicial notice. But such evidence is not *conclusive* of the issue in dispute. It is simply to be weighed and considered together with all other evidence in the case.

*Testimony of Karl Prussion.* He was the board's chief witness and his testimony was highly important to the board's case. He had been employed by the Federal Bureau of Investigation as an undercover agent to spy upon the Communist Party and report its activities.

Prussion did not know the petitioners or have any contact with them. His role at the hearing was that of an expert witness. He gave his ''opinion'' that the American Communist Party advocated the use of force and violence to overthrow our government and that *every* member of such party *must* know and believe that this was so.

This testimony was allowed by the hearing officer over the vigorous objection of petitioners. Their motion to introduce

evidence before the superior court, in order to attack Prussion's credibility as a witness, was denied.

Respondent board *now* asks that we disregard Prussion's entire testimony. The board now agrees with petitioners that "the witness Karl Prussion is an unreliable witness and that his testimony be eliminated from consideration by the court in deciding this case."

However, this repudiation of Prussion comes *after* the superior court, in the exercise of "its independent judgment on the evidence," had reached the conclusion that the findings of the respondent board are supported by "the weight of the evidence." (Code Civ. Proc., § 1094.5, subd. (c).)

The record does not disclose what weight was given to Prussion's testimony by the lower court. Neither does the record show how much weight was given by said court to what was erroneously considered to be evidence under the doctrine of judicial notice.

In the situation thus presented, the petitioners are entitled to a reconsideration of this cause by the superior court.

While the respondent board contends that there is sufficient evidence remaining in the record to support the findings and the judgment, it would be unjust and improper for us to review such evidence at this time in the light most favorable to said respondent.

In determining whether there is any substantial evidence, contradicted or uncontradicted, to support the conclusion heretofore reached by the trial court, the light in which we view such remaining evidence is of great importance. This is so because of the difference in the functions of a superior court and an appellate court in the instant situation.

This difference is stated to be as follows: "[T]he supreme court, in defining the function of the appellate courts after a review by mandamus in the superior court where a plenary review of an administrative agency's decision was afforded, has taken the position that the 'ultimate power of decision' in such cases rests with the judge of the lower court and that the appellate courts will not interfere with his judgment if there is any substantial support for it. Thus, although the superior court in such cases is bound to exercise its independent judgment on the evidence and determine that the decision accords with the weight of the evidence, the appellate court considering the same record treats the superior court as a trial court and applies to its judgment the substantial evidence rule as in ordinary civil appeals." (2 Cal. Jur.2d, "Administrative Law," § 242, pp. 405-406.)

The issues that are vital herein are (1) whether the American Communist Party advocated the forceful overthrow of the government during the period from 1953 to 1957 and (2) whether, assuming such advocacy, the petitioners knew of this at the time they signed the oath required by the Levering Act.

Unless each of these issues is properly determined adversely to petitioners, the accusations made against them must fall.

Petitioners have never failed to answer any question asked of them in these proceedings. They have never denied that they had been members of the Communist Party at one time. The only basis of the accusations made is that they committed perjury as defined in the Levering Act. (Gov. Code, § 3108.)

The judgment is reversed and the cause is remanded to the superior court with instructions to set aside its order dissolving the alternative writ and thereupon to take such further proceedings as may be proper and in accordance with this opinion.

Shoemaker, P. J., and Taylor, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 25, 1964.