[Civ. No. 22241. First Dist., Div. One. Mar. 11, 1965.]

Estate of ALBERT FAWCETT, Deceased. PATRICIA M. FAWCETT, Petitioner and Appellant, v. W. M. PINNEY, JR., as Executor, etc., Objector and Respondent.

Sullivan, Sullivan & Sullivan and Ruth Downs Sullivan for Petitioner and Appellant.

R. Frank Caccia for Objector and Respondent.

SULLIVAN, P. J.—We must decide here whether a wife whose action for divorce is pending at the time of her husband's death is entitled to a family allowance payable out of his estate. Initially we hold that her right to such allowance depends upon her right to support from him at the time of his death. As we shall explain, the mere fact that the parties were separated and divorce proceedings were pending when the husband died, does not of itself foreclose her claim. Additionally we hold that the order pendente lite in the divorce proceedings awarding her temporary support for a limited time but expiring before the husband's death did not, under the facts before us, amount to an adjudication that she had no right to support from him at the time of his death so as to preclude her claim for an allowance out of his estate. We believe that the probate court should make its own determination as to whether at that time she was invested with her legal right to support or had lost it by her conduct and should similarly determine, upon finding favorably to the widow, what allowance, if any, is reasonably necessary for her maintenance. We have therefore concluded that the order denying the family allowance should be reversed.

Appellant and decedent were married on May 20, 1932, and separated on May 14, 1963. There were four children born issue of the marriage, all of whom were over the age of 21 years at the time of the order appealed from. On June 7, 1963, appellant commenced an action for divorce against decedent in the court below.[1] Upon the hearing of an order to show cause issued therein, the court on June 24, 1963, made an order pendente lite[2] ordering among other things

---

[1]Pursuant to stipulation of counsel we have ordered the record on appeal herein augmented to include the county clerk's file in action No. 532880 entitled In the Superior Court of the State of California in and for the City and County of San Francisco, *Patricia M. Fawcett, Plaintiff* v. *Albert T. Fawcett, Defendant.*

[2]Hearing on the order to show cause was held on June 25, 1963. The record before us does not contain any minute order entered at the conclusion of the hearing but does contain a formal order signed by the judge and filed on September 17, 1963. The transcript of the oral proceedings on the hearing of the order to show cause discloses the following pertinent remarks of the court at the conclusion of the testimony: "THE COURT: What are you asking, counsel? MR. GATELY

that appellant vacate the family home of the parties on or before June 29, 1963, that decedent have exclusive possession thereof for three months, and that decedent pay appellant $100 per month for three consecutive months commencing on July 1, 1963.

Decedent died testate on October 31, 1963. After proceedings in the court below, his will was duly admitted to probate and on November 26, 1963, respondent was appointed executor thereof. On December 10, 1963, appellant filed in such estate proceedings her petition for a family allowance. This petition alleged *inter alia* that no inventory had been filed; that decedent's estate so far as known to petitioner consisted of real and personal property of the estimated value of $42,000; that decedent left surviving petitioner, his widow, but no minor children; "that petitioner, his widow, is without adequate estate of her own, and is entitled to an allowance out of the property of said estate, of a reasonable amount, for the maintenance of herself, according to her circumstances and manner of living; that the property of said estate, exempt by law from execution, is not sufficient for the support and maintenance of petitioner; that $200.00 per month is a reasonable amount to be paid by the estate of decedent for that purpose"; and that petitioner lacked sufficient funds to pay her attorney. Petitioner sought thereby a family allowance of $200 per month from the date of decedent's death until further order of court, together with an attorney's fee of $150.

---

[Counsel for appellant herein]: We are asking for attorneys fees and for possession of the family home. Also we are asking $100 support for Mrs. Fawcett. THE COURT: No. She is making a salary. I will not grant any temporary alimony in this case. She has more than an adequate salary. . . . I will order you out of the house. On the other hand, I will order at the same time as a temporary matter for three months only that the husband will pay $100 support. That will be the equalizer. . . . You will move out by Saturday noon, Madam. There will be a restraining order. Neither will do anything to the other, such as that be, or you will have to have the police department in there, but you move out. You will get $100 a month alimony so you can take care of the room rent and we will see how this works out. It is an unusual situation but I am going to do it this way."

The formal written order thereafter filed provides in relevant part as follows: "IT IS HEREBY ORDERED that plaintiff vacate the parties marital residence commonly known as 399 Ellington Avenue, San Francisco, California, on or before Saturday, June 29, 1963, and that defendant have exclusive possession of said premises for a period of three (3) months from the date of this appearance.

"IT IS FURTHER ORDERED that defendant pay to plaintiff the sum of One Hundred Dollars ($100.00) per month for a period of three (3) consecutive months, commencing on July 1, 1963."

On January 2, 1964, respondent-executor filed an answer to said petition declaring that the abovementioned divorce proceedings had been pending from June 7, 1963, to the date of decedent's death and requesting the probate court to take judicial notice thereof. "[I]n aid of such judicial notice," respondent attached thereto a copy of the order pendente lite made in the divorce proceedings on June 24, 1963. The answer further alleged: "Said order for temporary support expired by its own terms the last payment being due on September 1, 1963, and was never extended or modified. The only assets of said estate known to your affiant are the family home which is presently being occupied by Mrs. Fawcett and a settlement from a personal injury suit in the sum of $1,473.33 and that there is no income from said estate. That at the time of Mr. Fawcett's death on October 30 [*sic*], 1963, there was no duty to support Mrs. Fawcett."

On the same day, January 2, 1964, which was the date set for the hearing, appellant filed a declaration[3] and a memorandum of authorities in support of her petition. In her declaration she stated that at the time of decedent's death, she and decedent had been married for more than 30 years; that in June 1963 she filed a complaint for divorce against decedent and "on September 10, 1963, my husband and I met and reconciled; we agreed that we did not want a divorce and on that day, or the following day, I informed my attorney in that matter that I wanted the divorce stopped; that my husband said he had to remain under a doctor's care in San Mateo for the time being and he returned to my daughter's home there; that on or about October 7, 1963, I visited my husband, we had a long talk and both agreed that we were sorry about the divorce proceeding; that I spent the last two nights of his life in the hospital with my husband." Respondent-executor filed no counter-declaration.

At the hearing on January 2, 1964, the court heard arguments of counsel but, so far as the record before us discloses, took no testimony. At oral argument counsel for appellant stated to us, without contradiction by counsel for respondent, that appellant was present at the above hearing, took the witness stand but, for some reason not made clear to us either by the instant record or counsel for the parties, gave no testimony. Nor does the present record disclose any offer of

---

[3]Both respondent's answer to the petition and appellant's declaration in support of it were made under penalty of perjury in conformity with Code Civ. Proc., § 2015.5.

proof or other statement by counsel indicative of what appellant intended to testify to. Appellant's memorandum of authorities filed below and her brief filed herein both assert, without contradiction by respondent, that at the time of the hearing on the petition for family allowance appellant was employed on a temporary basis by the City and County of San Francisco and was earning approximately $285 per month.[4] The matter was thereupon submitted.

On January 24, 1964, the probate court filed its formal order denying the petition for family allowance. The court specifically found therein that no inventory had been filed; that decedent left surviving him his widow, petitioner, but no minor children; and "that at the time [of] decedent's demise, the Petitioner and decedent were separated. Further that a divorce proceeding was pending and *by order in said proceeding Petitioner was not entitled to further support* and no duty was incumbent on decedent to support petitioner at the time of decedent's demise. The Court further finds no change in circumstances of Petitioner from the time said order was made." (Italics added.) Upon the foregoing findings, the court ordered that the petition be denied.

The positions of the parties before us are sharply divergent. Appellant contends that the finding that "at the time [of] decedent's demise, the Petitioner and decedent were separated" is not supported by the evidence; that the finding that "by order in said [divorce] proceeding Petitioner was not entitled to further support and no duty was incumbent on decedent to support petitioner at the time of the decedent's demise" is not supported by the evidence and is against the law; that the finding of "no change in circumstances of Petitioner from the time said order was made" is not supported by the evidence; and that under all the circumstances the denial of her petition was an abuse of discretion. Respondent-executor, on the other hand, contends that the order pendente lite made in the divorce proceedings precluded a family allowance; and that appellant waived her right to such allowance by her conduct.

Section 680 of the Probate Code provides that a widow is

---

[4]At the hearing of the order to show cause in the divorce proceedings (held on June 25, 1963) appellant testified she was a temporary employee of the San Francisco Police Department and that she earned $385 per month subject to deductions of $70. Her employment at the time of the hearing of the petition for family allowance on January 2, 1964, appears to be the same as in June 1963 and her earnings approximately the same.

entitled to a reasonable allowance for her maintenance out of her husband's estate during the progress of its settlement. ■ "[A] family allowance was intended by the Legislature to continue, during the settlement of the estate, the support that the wife was previously receiving or was at least entitled to receive. [Citations.]" (*Estate of Brooks* (1946) 28 Cal.2d 748, 755 [171 P.2d 724]; *Estate of Wiedemann* (1964) 228 App.2d 362, 367 [39 Cal.Rptr. 496].) ■ Thus section 680 does not confer an absolute statutory right to a family allowance on every widow. (*Estate of Brooks, supra,* 28 Cal.2d 748, 750; *Estate of Wiedemann, supra.*) "The right of a wife to a family allowance is conditioned upon her right to support at the time of her husband's death." (*Estate of Fallon* (1957) 49 Cal.2d 402, 404 [317 P.2d 963]; *Estate of Brooks, supra,* 28 Cal.2d 748, 754-755.)

The crucial question, therefore, in the instant case is this: Did appellant have a right to support from decedent at the time of his death?

■ The right of a wife to support from her husband arises from the marriage relationship and continues during its existence. (Civ. Code, §§ 155, 174; *Hudson* v. *Hudson* (1959) 52 Cal.2d 735, 743 [344 P.2d 295]; *Title Ins. & Trust Co.* v. *Ingersoll* (1910) 158 Cal. 474, 492 [111 P. 360]; *Remondino* v. *Remondino* (1940) 41 Cal.App.2d 208, 213 [106 P.2d 437]; and see *Calhoun* v. *Calhoun* (1947) 81 Cal.App.2d 297, 301 [183 P.2d 922]; *Smalley* v. *Smalley* (1959) 176 Cal.App.2d 374, 376 [1 Cal.Rptr. 440, 74 A.L.R.2d 756].) ■ A wife loses such right to support while she has abandoned her husband without justification until she offers to return and while she is living separate from him by agreement, unless such support is stipulated in the agreement. (Civ. Code, § 175; *Estate of Bose* (1910) 158 Cal. 428, 429 [111 P. 258]; *Volkmar* v. *Volkmar* (1905) 147 Cal. 175, 177 [81 P. 43]; and see *Estate of Cooper* (1950) 97 Cal.App.2d 186, 193 [217 P.2d 499].) ■ However, the fact that the spouses are separated or living apart does not of itself constitute abandonment of a spouse or of the right to support. (*Estate of Fallon, supra,* 49 Cal.2d 402, 404; *Estate of Coons* (1951) 107 Cal.App.2d 531, 536 [237 P.2d 291]; *Estate of Cooper, supra.*) ■ If therefore a wife's separation from her husband is justified, it does not cause her to lose her continuing right of support. (*Estate of Coons, supra; Winslow* v. *Winslow* (1927) 82 Cal. App. 515, 518 [255 P. 880].) ■ Upon a petition for a family allowance by a widow who is separated from her hus-

band at the time of his death, the trial court has the duty to consider competent and relevant evidence as to whether the separation was caused by the decedent's acts or whether it was by agreement between the parties. (*Estate of Miller* (1910) 158 Cal. 420, 424-425 [111 P. 255]; *Estate of Cooper, supra,* 97 Cal.App.2d 186, 193.)[5]

Respondent's position is that appellant had no right to support at the time of decedent's death. He argues that since a family allowance is merely the continuance of the decedent's duty of support, the order pendente lite by providing support for a limited period of three months, which expired before decedent's death, was a clear adjudication by the court in the divorce action that appellant was entitled to no additional support. Thus it is argued since the court below found no change in appellant's circumstances at the time of death, appellant was then without right of support. Respondent rests this argument chiefly on the *Estate of Brooks, supra,* 28 Cal.2d 748 and the *Estate of Fallon, supra,* 49 Cal.2d 402. We examine these cases more closely.

In *Brooks* the spouses had separated approximately four years before the husband's death and had thereafter engaged in certain inconclusive divorce and other litigation. Approximately eight months before the husband's death, the wife was awarded an interlocutory decree of divorce which made no provision for her support. Before the divorce became final, the husband died. The wife thereupon applied for and received a family allowance and probate homestead. After examining two irreconcilable lines of decisions, the court, as we have already pointed out, chose that line of decisions enunciating the rule that the wife's right to a family allowance is conditioned upon her right to support at the time of her husband's death. Observing that "It is settled in this state that a wife who obtains an interlocutory decree of divorce making no provision for her support is not entitled to support. (*London G. & A. Co.* v. *Industrial Acc. Com.,* 181 Cal. 460, 465-466 [184 P. 864].)" (28 Cal.2d 748, 755), the court reversed the order granting the family allowance and homestead.

*London G. & A. Co.,* upon which the court in *Brooks* rested its reversal, held that while the interlocutory judgment of

---

[5]See *Estate of Bose, supra,* 158 Cal. 428 where, in reversing an order setting aside the husband's estate to the widow under former Civ. Code, § 1386, the court held that the widow was not a member of the decedent's family since the evidence established, if not her abandonment of him, at least her separation from him by agreement without stipulation for support therein.

divorce there involved did not terminate the marriage status, the spouses "are, by virtue of the interlocutory judgment, living separate by agreement, and if that judgment makes no provision for her support by him, they are living separate by an agreement which does not provide for her support, and under [Civil Code] section 175 he is not, during that interval, personally liable for her support. The judgment has the effect of a contract for that purpose." (*London G. & A. Co. v. Industrial Acc. Com.* (1919) 181 Cal. 460, 466-467 [184 P. 864].) It is now settled law in California that although an interlocutory judgment of divorce does not dissolve the marriage, it terminates the obligation of support in the absence of a provision therefor. (*London G. & A. Co. v. Industrial Acc. Com., supra,* 181 Cal. 460, 466-467; *McClure* v. *McClure* (1935) 4 Cal.2d 356, 359 [49 P.2d 584, 100 A.L.R. 1257]; *Wilson* v. *Superior Court* (1948) 31 Cal.2d 458, 462-463 [189 P.2d 266]; *Grant* v. *Superior Court* (1963) 214 Cal.App.2d 15, 20 [29 Cal.Rptr. 125].) In essence the holding in *Brooks* that the husband was not legally liable for the support of his wife was based on the above-settled rule.

In *Estate of Fallon, supra,* 49 Cal.2d 402, the spouses had filed reciprocal divorce actions about ten years before the husband's death. Both parties were denied divorces but the court awarded the wife support of $250 a month for one year only pursuant to section 136 of the Civil Code.[6] This judgment was affirmed on appeal. The husband thereupon made the support payments for the year as directed and then stopped. He died seven years later. During this seven-year period the parties lived separate and apart and the wife received no further support from him. The Supreme Court, in reversing an order granting the wife a family allowance out of the husband's estate, considered the decree made in the divorce action denying a divorce to both parties but awarding the wife support for a limited time as analogous to a decree of separate maintenance. Relying on its decision in *Monroe* v. *Superior Court* (1946) 28 Cal.2d 427 [170 P.2d. 473][7] the court held that the wife, while not receiving support payments

---

[6]Section 136 provides: "Though judgment of divorce is denied, the court may, in an action for divorce, provide for the maintenance by the huband, of the wife and children of the marriage, or any of them."

[7]In *Monroe* a decree of separate maintenance ordered the husband to pay the wife a specified sum for a limited period without any provision reserving jurisdiction as to such support. The husband complied with the decree and thereafter the wife applied for a modification of the decree and a further allowance for her support based on changed circumstances,

at the time of her husband's death, could have sought modification of the decree by showing sufficiently changed circumstances before his death; that the husband's death did not foreclose her right to seek in a subsequent probate proceeding a family allowance based on changed circumstances occurring before the husband's death; but that the record in *Fallon* disclosed no evidence of the same. It is to be noted that by its decree in the Fallon divorce action, "The court left the parties still married, although *separated by consent, . . .*" (Italics added.) (*Fallon* v. *Fallon* (1948) 83 Cal.App.2d 798, 806 [189 P.2d 766].)

*Brooks* and *Fallon,* therefore, develop separate corollaries to the proposition that a widow's right to a family allowance depends on her right to support from him at the time of his death. *Brooks* holds that a widow has no right to support from the decedent at the time of his death and therefore no right to a family allowance from his estate where an interlocutory decree of divorce then in effect makes no provision for her support. *Fallon* holds that she has no right to support and thus to a family allowance where a decree denying divorce has made provision for her support for a limited time only, such provision has expired before the husband's death, and she has not shown in the probate court sufficiently changed circumstances occurring before the death of the husband. In each case the marriage had not been dissolved prior to the husband's death. In each case there was a judgment on the merits. In *Brooks* the court granted a divorce on the merits but terminated the husband's obligation to support the wife. In *Fallon* the court denied a divorce on the merits but provided pursuant to Civil Code section 136 for the wife's support for a limited time. Clearly the case at bench does not fall within *Brooks.* Nor is it, on its facts, identical with *Fallon.* We discuss *infra* respondent's argument that *Fallon* is here applicable.

With these principles in mind, we turn to appellant's contentions on appeal. As we have said, she claims there

The court said: "The right to support arises out of the marriage relationship. [Citation.] A separate maintenance decree does not end the marriage, and therefore does not end the obligation to support; it only regulates the extent of that support. It is settled that a decree of separate maintenance can be modified upon a showing of changed circumstances. [Citations.] This rule is applicable to the period for which support is granted as well as to the amount thereof. Just as it may become necessary to increase the amount of support for a period of special needs, so it may become necessary to grant support for a period not covered by the original decree." (28 Cal.2d 427, 429.)

is no basis for the order made below either in the evidence or in law. Her basic position is that she and the decedent were reconciled when he died and that even if they were not reconciled she cannot be denied a family allowance because of her separation and the mere filing of a divorce action. Consistently with this position, she argues that the *Fallon* case is inapplicable.

To establish her claim of reconciliation at the date of decedent's death, appellant attacks the court's finding that "the Petitioner and decedent were separated" as being unsupported by the evidence. We do not agree. While appellant stated in her declaration in support of her petition that the parties met and reconciled on September 10, 1963, and, while respondent filed no declaration controverting such statement,[8] there is evidence supportive of the finding in the divorce proceedings of which the trial court took judicial notice. The county clerk's file which is a part of the instant record (see fn. 1, *ante*) discloses that on September 17, 1963, one week after the claimed reconciliation, appellant through her then counsel[9] obtained ex parte an order modifying the order pendente lite dated June 24, 1963. Such order provided "that commencing on the 17th day of September, 1963, plaintiff is allowed to occupy the parties marital residence commonly known as 399 Ellington Avenue, San Francisco, California. That said occupancy shall not be exclusive and may be equally enjoyed by defendant." At oral argument, appellant contended that the securing of such order was not inconsistent with a reconciliation between the parties and that it was necessary for appellant to formally terminate her exclusion from the family residence. The securing of the ex parte order, without further explanation, seems to us to be susceptible of different inferences—one that appellant, having become reconciled, desired formal court approval of her reoccupation of the premises and the other that appellant obtained authority to reoccupy the house in the course of continuing the divorce proceedings. The latter inference is fortified by the following circumstances in the divorce record : On September 24, 1963, two weeks after the claimed reconciliation, decedent's counsel filed a memorandum to set the

---

[8] While it may have been impossible for the executor to personally contradict the allegation of the reconciliation of the parties, it does not appear that it was impossible for him to offer the affidavits or oral testimony of third-party witnesses on this issue.

[9] Appellant's counsel in the probate proceedings and in this appeal did not represent her in the divorce proceedings.

divorce and on October 4, 1963, *appellant's counsel filed a supplemental memorandum to set.* On October 10, 1963, the court set the case for pretrial conference on November 20, 1963, and gave notice of time and place thereof. (Cal. Rules of Court, rule 209.) In our view the obtaining of the ex parte order on September 17, 1963, and the filing of the supplemental memorandum to set constitute evidence susceptible of the inference that the parties had not reconciled and were still separated. ▇ "Judicial notice is a kind of evidence (Code Civ. Proc., § 1827, subd. 1) and may be relied upon to contradict other evidence and to support findings of fact and a judgment based thereon. (*Del Bosque* v. *Singh,* 19 Cal.App.2d 487, 489 [65 P.2d 951].)" (*Mack* v. *State Board of Education* (1964) 224 Cal.App.2d 370, 373 [36 Cal.Rptr. 677].)

▇ However the foregoing finding on the separation of the parties is not, nor can it reasonably be construed as, a finding that such separation resulted either from appellant's unjustified abandonment of decedent or from a mutual agreement of the parties so as to abrogate appellant's right to support.[10] (Civ. Code, § 175; *Estate of Bose, supra,* 158 Cal. 428, 429; *Volkmar* v. *Volkmar, supra,* 147 Cal. 175, 177.) Nor would either of such findings be justified by the evidence. There is no evidence in this record that appellant abandoned decedent without justification. Nor is there any evidence that the spouses separated by agreement. ▇ Pendency of a divorce action does not of itself establish separation by mutual consent. Upon the principle that a judgment is a contract, an interlocutory decree of divorce may have the effect of an agreement to live separate and apart (*London G. & A. Co.* v. *Industrial Acc. Com., supra,* 181 Cal. 460, 466-467) but it does not logically follow that the commencement of an action for divorce constitutes such an agreement. ▇ In summary, the court merely found that the parties were separated. Such a finding does not of itself establish appellant's abandonment of her husband or her loss of her right to support from him (*Estate of Fallon, supra,* 49 Cal.2d 402, 404; *Estate of Coons, supra,* 107 Cal.App.2d 531, 536; *Estate of Cooper, supra,* 97 Cal.App.2d 186, 193) and is not therefore sufficient by itself to support an order denying her a family allowance.

[10]It is obvious that the finding quoted in its entirety above does not specify whether the separation resulted from appellant's unjustified abandonment of decedent, because of the conduct of decedent toward appellant or pursuant to the mutual agreement of the parties.

Is the order denying family allowance supported by the other findings taken together with the finding of separation? The rationale of the order appears to be this: The parties were separated, a divorce proceeding was pending, "by order in said proceeding Petitioner was not *entitled* to *further* support" (italics added), and at the time of the probate hearing there had been no change in her circumstances. Therefore, the court concluded, decedent had no duty to support appellant at the time of his death. Thus the court below seems to have considered the order pendente lite made in the divorce action on June 24, 1963, as having the effect of an adjudication that appellant was not entitled to further support and had no right to support from her husband at the time of his death.

Clearly the pendente lite order was not an adjudication such as that made by the judgments in *Brooks* and *Fallon*. As distinguished from those cases, it was not an order made after or in conjunction with the determination of the divorce action on its merits. (See *Wilson* v. *Superior Court, supra,* 31 Cal.2d 458, 461.) Indeed its purpose was not to determine the merits at all but solely to preserve the family and the wife's separate property intact until the court eventually determined the case on the merits. (*Spreckels* v. *Spreckels* (1952) 111 Cal.App.2d 529, 534 [244 P.2d 917].) The order pendente lite was therefore essentially different from the judgments entered after a determination of the merits in *Brooks* and *Fallon* which, as we have pointed out, were tantamount to an agreement to live separate and apart (*London G. & A. Co.* v. *Industrial Acc. Com., supra,* 181 Cal. 460, 466-467) without provision therein for the wife's support (*Estate of Brooks, supra,* 28 Cal.2d 748, 750; *London G. & A. Co.* v. *Industrial Acc. Com., supra*) or with a provision for the wife's support for a limited time only. (*Fallon* v. *Fallon, supra,* 83 Cal.App.2d 798, 806.)

This essential difference becomes manifest upon a consideration of the character of the order here under discussion. The authority for such an order is found in section 137.2 of the Civil Code.[11] Pendente lite allowances and permanent allowances differ fundamentally in nature (*Wilson* v. *Superior Court, supra,* 31 Cal.2d 458, 462-463) and function

[11]Civ. Code, § 137.2 provides: "During the pendency of any action for divorce or for separate maintenance or for the support, maintenance or education of children, the court may order the husband or wife or father or mother, as the case may be, to pay any amount that is neces-

784

(*Loeb* v. *Loeb* (1948) 84 Cal.App.2d 141, 144-147 [190 P.2d 246]). ▮ ''The manifest purposes of pendente lite allowances to a wife are to enable her to live in her accustomed manner pending the disposition of the action and to provide her with whatever is needed by her to litigate properly her side of the controversy. [Citations.] . . . ▮ Thus, the general rule is that the propriety of pendente lite allowances to a wife turns primarily upon the sufficiency of her showing of *need* for them.'' (Italics added.) (*Loeb* v. *Loeb, supra,* 84 Cal.App.2d 141, 144-145; in accord: *Locke Paddon* v. *Locke Paddon* (1924) 194 Cal. 73, 81 [227 P. 715]; *Mudd* v. *Mudd* (1893) 98 Cal. 320, 321 [33 P. 114]; and see *Hall* v. *Hall* (1954) 42 Cal.2d 435, 438-439 [267 P.2d 249]; *Verdier* v. *Verdier* (1958) 162 Cal.App.2d 325, 328-330 [327 P.2d 934]; *Hood* v. *Hood* (1962) 211 Cal.App.2d 332, 338 [27 Cal.Rptr. 47].)

▮ ''On the other hand the object of *permanent* allowances is to make an equitable apportionment between the parties. . . . Our courts have construed an award of *permanent* support under . . . [section 139] to a wife to be in the nature of compensation for the wrong done her and, in this sense, a penalty imposed upon the husband. . . .'' (Italics added.) (*Loeb* v. *Loeb, supra,* 84 Cal.App.2d 141 at p. 146.) ''In theory, alimony is considered to be compensation to the injured spouse for the loss resulting from the other's breach of the obligations of the marital relationship.'' (*Hall* v. *Superior Court* (1955) 45 Cal.2d 377, 384 [289 P.2d 431]; in accord: *Webber* v. *Webber* (1948) 33 Cal.2d 153, 157-158 [199 P.2d 934]; *Aarons* v. *Brasch* (1964) 229 Cal.App.2d 197, 202 [40 Cal.Rptr. 153]; *Haldeman* v. *Haldeman* (1962) 202 Cal.App.2d 498, 507-508 [21 Cal.Rptr. 75]; *Brawman* v. *Brawman* (1962) 199 Cal.App.2d 876, 880 [19 Cal.Rptr. 106]; *Arnold* v. *Arnold* (1946) 76 Cal.App.2d 877, 885-886 [174 P.2d 674].)

▮ We conclude therefore that the order pendente lite was not an adjudication of appellant's right to support from her husband at the time of his death. ▮ Although the briefs of the parties make no mention of the doctrine of res judicata, we observe that ''An order made on a motion is

sary for the support and maintenance of the wife or husband and for the support, maintenance and education of the children, as the case may be. Any such order may be enforced by the court by execution or by such order or orders as, in its discretion, it may from time to time deem necessary. Any such order may be modified or revoked at any time during the pendency of the action except as to any amount that may have accrued prior to the order of modification or revocation.''

not res judicata in the same sense as a judgment; it is conclusive only upon matters specifically passed upon, not those which might have been presented but were not.'' (*Rosenthal* v. *Rosenthal* (1961) 197 Cal.App.2d 289, 296 [17 Cal.Rptr. 186] and authorities there cited.) Here the order did not pass upon the issues in the main action. An application for temporary alimony is a proceeding collateral to the basic action. (*Lincoln* v. *Superior Court* (1943) 22 Cal. 2d 304, 309 [139 P.2d 13]; *Chichester* v. *Chichester* (1964) 228 Cal.App.2d 491, 497 [39 Cal.Rptr. 533].) Unlike *Brooks*, it was not an interlocutory judgment terminating the wife's right to support. Unlike *Monroe* and *Fallon*, it was not a judgment of separate maintenance or a judgment analogous to one of separate maintenance determining the extent of support. As we have said, the judgments in those three cases were tantamount to a contract to live separate and apart. The main issues in the divorce proceedings here under discussion had not been determined or fused into such a contract. Here the parties were not ''separated by consent.'' (Cf. *Fallon* v. *Fallon, supra,* 83 Cal.App.2d 798, 806.)

Contrary to respondent's claim, the order pendente lite was not definitive of appellant's entitlement to support. It is beyond argument that it did not and could not determine the extent of appellant's right to support for all time, since the case had not yet been tried on the merits. It is noteworthy that the order made an award in appellant's favor for three months and not ''until further order of court.'' Can it even be said that such order constituted a determination that such would be the extent of all *temporary* support until the case was tried and irrespective of the time it would take to bring it to trial? In our view, the order appears ambiguous. An examination of the pertinent oral proceedings (see in part fn. 2, *ante*) discloses that the order was made in an attempt to solve ''an unusual situation'' arising out of the inability of the parties to live together harmoniously, that the court ordered the temporary exclusion of the wife from the family dwelling (see Civ. Code, § 157) and that as part of the solution, as an ''equalizer'' and to ''take care of the room rent'' the court made the three months' award, observing ''and we will see how this works out.'' The order did *not* provide that appellant would be entitled to no further support after the specified three months and while the case was awaiting trial. In the light of the pertinent oral proceedings, it is susceptible of the construction that it

was of a temporary and experimental nature and that at the end of the three months the court would see "how this works out." In sum, the order pendente lite did not adjudicate or determine *on the merits* the extent of appellant's right to support from decedent and it is doubtful that as an expedient to meet an unusual situation it made any determination one way or the other of appellant's right to *temporary* support beyond the specified three-month period.

Furthermore, as already noted, on September 17, 1963, and before the expiration of the three-month period, the same judge who rendered the order pendente lite issued an ex parte order modifying it so as to allow appellant to occupy and enjoy the marital residence equally with decedent. The record shows that pursuant to such order appellant moved back into the family dwelling and was occupying it at the time of the hearing on the petition for family allowance.[12] Presumably, although the record is silent on the point, appellant's husband at all times paid for the upkeep and maintenance of such residence—the taxes, insurance, utilities, and other items of maintenance. The sparse record[13] and briefs before us do not precisely state whether the family dwelling was community property or the husband's separate property. In view of the order of exclusion made in the divorce proceedings, it is a reasonable conclusion that it was not appellant's separate property.[14]

The family dwelling was then either community property or the separate property of the husband. If community property, he had the management and control of it subject to statutory restrictions (Civ. Code, §§ 161a, 172a) and was not deprived of such management and control by the pendency of the divorce proceedings against him. (*Harrold* v. *Harrold* (1954) 43 Cal.2d 77, 81 [271 P.2d 489]; *Lord* v. *Hough* (1872) 43 Cal. 581, 585; *Croxson* v. *Croxson* (1954) 130 Cal. App.2d 50, 52 [277 P.2d 864]; *Chance* v. *Kobsted* (1924) 66 Cal.App. 434, 437 [226 P. 632].) If separate property, it is a reasonable assumption that he was paying for its upkeep and maintenance. In either event, therefore, it appears that

---

[12]See answer of executor quoted by us *supra*.

[13]The instant appeal is on a clerk's transcript. We do not have before us any reporter's transcript of the hearing of appellant's petition in the probate court.

[14]Civ. Code, § 157 confers on the court power to exclude the husband or wife "from the family dwelling or from the dwelling of the *other*, . . ." (Italics added.) In addition, the record shows that appellant's counsel asserted in the probate court that "Petitioner has no separate property."

at all times subsequent to September 17, 1963, and at the time of decedent's death on October 31, 1963, appellant was receiving at least *shelter* in the family residence and was thus receiving *support* from decedent in the form of a family residence maintained at the expense of decedent. The record does not indicate, and it would be futile to speculate as to whether decedent furnished and paid for other expenses of the residence such as food and other household supplies, conveniences and services.

We reach these final conclusions: The order pendente lite did not adjudicate appellant's right to support from decedent at the time of his death. Since it did not, it is immaterial whether or not appellant is able to show changed circumstances occurring after the order pendente lite and before decedent's death. Appellant's reoccupation of the family home pursuant to the modification of the order is susceptible of the inference that she was entitled to have a home furnished her at decedent's expense and thus to support from him at least to that extent. On its facts, the instant case is distinguishable from *Fallon* where the award of support was part of a final judgment on the merits and where at all times thereafter the parties lived separate and apart, the husband in California and the wife in Canada. Under all the circumstances *Fallon* does not govern and the rule there articulated should not be extended to the present factual situation.

Appellant was decedent's wife at the time of his death. Her right to support, as we have said, derives from such marital relationship. It was not lost merely by her separation or the commencement of her divorce proceedings and the extent of such right was not determined by the order pendente lite.

Family allowances are strongly favored in the law. (*Estate of Filtzer* (1949) 33 Cal.2d 776, 783 [205 P.2d 377]; *Estate of Whitney* (1916) 171 Cal. 750, 755 [154 P. 855]; *Estate of Wiedemann, supra,* 228 Cal.App.2d 362, 367; *Estate of Goulart* (1963) 218 Cal.App.2d 260, 264 [32 Cal. Rptr. 229].) The probate court has a wide discretion in making an order for a family allowance, including its amount and duration. (*Estate of Houchin* (1958) 160 Cal.App.2d 81, 86 [324 P.2d 647]; *Estate of Loundagin* (1962) 199 Cal. App.2d 555, 558 [19 Cal.Rptr. 19]; *Estate of Hoffman* (1963) 213 Cal.App.2d 635, 643 [29 Cal.Rptr. 60].) The fact that appellant may have property or income of her own does not of itself constitute a basis for the denial of a family allowance. (*Estate of Secord* (1948) 84 Cal.App.2d 783, 786 [192 P.2d 81]; *Estate of Cesare* (1955) 130 Cal.App.2d 557,

569 [279 P.2d 607] ; *Estate of Hoffman, supra*; and see *Estate of Loundagin, supra,* 199 Cal.App.2d 555, 557.) Probate Code section 680 provides that a widow is "entitled to such *reasonable* allowance . . . as shall be *necessary* for . . . [her] *maintenance* according to . . . [her] *circumstances* . . ." (Italics added.) ▇▇▇ The amount of appellant's income and the extent of her property are relevant on the issues of *necessity* and *reasonableness* raised by her petition the determination of which rests in the sound discretion of the court. (*Estate of Hoffman, supra.*) On retrial the probate court should receive competent and relevant evidence in its determination of these issues. If on such retrial the respondent-executor contests appellant's legal right to support because of the separation of the parties, the court should also receive and consider competent and relevant evidence bearing upon appellant's right to support at decedent's death, including evidence directed to the questions whether appellant unjustifiably abandoned decedent or whether the separation of the parties was caused by decedent's acts or whether it was by agreement of the parties. (See *Estate of Miller, supra,* 158 Cal. 420, 424-425; *Estate of Cooper, supra,* 97 Cal.App.2d 186, 193.) ▇▇▇ But, we hold, the probate court, in disposing of the petition, should not treat the order pendente lite as an adjudication of appellant's right of support and restrict the evidence to a showing of changed circumstances occurring after the order pendente lite and before decedent's death.

Respondent contends that appellant waived her right to a family allowance by her conduct towards decedent, citing *Estate of Resler* (1954) 43 Cal.2d 726, 739 [278 P.2d 1] and *Estate of Parkinson* (1924) 193 Cal. 354, 359 [224 P. 453]. The contention has no merit. The divorce action had not yet reached a trial on the merits. This issue was not tried in the probate court. As we have pointed out, whether appellant by her conduct lost her statutory right to an allowance is to be determined on retrial. (See *Estate of Miller, supra,* 158 Cal. 420, 423; *Estate of Bose, supra,* 158 Cal. 428, 429; *Estate of Parkinson, supra; Estate of Brooks, supra,* 28 Cal.2d 748, 750, 751-752; *Estate of Fulton* (1936) 15 Cal.App.2d 202, 205-206 [59 P.2d 508].)

The order is reversed.

Molinari, J., and Sims, J., concurred.

A petition for a rehearing was denied March 30, 1965, and respondent's petition for a hearing by the Supreme Court was denied May 5, 1965.