[Civ. No. 50735. First Dist., Div. Three. July 23, 1981.]

Estate of GRACE KALAL, Deceased.
WELLS FARGO BANK, as Administrator With the Will Annexed,
etc., Petitioner and Respondent, v.
JAMES T. KALAL, Claimant and Appellant.

---

COUNSEL

Kilday & Carter and Gerald L. Kilday for Claimant and Appellant.

Robert S. Stein, Bonnie S. Garland and Burden, Aiken & Mansuy for Petitioner and Respondent.

## OPINION

**BARRY-DEAL, J.**—James T. Kalal, the estranged widower of the deceased, Grace Kalal, petitioned for a family allowance pursuant to Probate Code section 680. He appeals from the order on March 7, 1980, denying his petition.[1]

### The Facts[2]

Appellant and decedent were married on January 3, 1953. They had no children. In 1968, Mrs. Kalal suffered a stroke, and the court appointed appellant to serve as conservator of her estate. At some time during the marriage, appellant had one leg amputated. The couple lived on Taraval Street in one of two flats in a building which also had a commercial rental unit; Mrs. Kalal had apparently acquired the property before marriage. Mr. Kalal did not pay property taxes on the building, but he contributed toward the maintenance, paid utility bills, and provided food for the household. He owned and operated a small auto sales business.

In 1974, Mrs. Kalal left appellant for six months; she stayed with her nephew, Roy McNutt, in Canada for a while and then in Chico with her daughter from a previous marriage. During this separation, Mrs. Kalal filed a petition for dissolution of the marriage, but upon her return from Chico, she dismissed the petition.

In the fall of 1978, Mrs. Kalal again filed a petition for dissolution of marriage, as well as a petition for removal of appellant as her conservator. Both Mr. and Mrs. Kalal testified at the hearing on October 4,

---

[1]An order granting or denying a family allowance is an appealable order. (Prob. Code, §§ 1240, 684.)

[2]The facts are summarized from the briefs and the record which includes the reporter's transcript of the conservatorship proceedings on October 4, 1978. Pursuant to [Cal. Rules of Court] rule 12, we have augmented the record with the court record in the dissolution proceedings, Superior Court for the City and County of San Francisco, action No. 743739.

1978, for a change of conservator. Mrs. Kalal, cared for by a housekeeper during weekdays, complained that appellant did not fix her meals at dinnertime or on weekends and that he had not spoken to her in a year. Appellant countered that when she discovered she could not enter her safe deposit box without him because of the conservatorship, she became angry, stopped talking to him, and refused to eat the meals that he prepared. There was no evidence that appellant had mishandled his wife's estate, but it was apparent from the testimony that the couple had not been compatible for some time. The court removed appellant as conservator and at Mrs. Kalal's request appointed her Canadian nephew as conservator of her estate.

■ ■■■■ In the dissolution proceedings,[3] Mrs. Kalal obtained an order to show cause to have appellant vacate the Taraval Street property. At a hearing on November 9, 1978, the couple, each represented by counsel, signed a court-prepared, printed form entitled, "Stipulation and Order on Order to Show Cause." The form provided in part: "THE PARTIES HEREBY STIPULATE AND AGREE that as to the items checked below the court shall make the following ... Temporary Order until time of trial...." Then, the box referring to standard mutual restraining orders was checked and under "Other orders" was inserted: "Respondent will vacate the family residence ... by December 15, 1978." The boxes referring to child custody, child support, debt payments, spousal support, and attorneys' fees were left blank, but slash marks were made through the paragraph wordings.

Between the date of the temporary order, November 8, 1978, and the date of decedent's death, about 10 months, the couple did not see or

---

[3]In her petition for dissolution of the marriage, Mrs. Kalal requested that spousal support be awarded to her, but in her moving papers for the temporary order she requested that spousal support be reserved "for time of trial." On November 24, 1978, appellant filed his response and indicated in paragraph 5(c) of the standard form that he requests that "... spousal support not be awarded...."

Although the 1970 Family Law Act changed the designation of the documents to be filed in a dissolution proceeding, the petition (complaint) and response (answer) must be evaluated according to the standard rules on pleading. Paragraph five in both the petition and response is labeled "Requests." It is, however, equivalent to the usual "prayer" in other civil proceedings and is not part of the cause of action. The prayer is not essential in a contested case, it may be corrected or supplied by amendment, and recovery may be allowed even in the absence of a prayer. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 374 et seq., p. 2038 et seq.)

speak to each other and exchanged no funds. The dissolution proceeding was never set for trial.

Grace Kalal died on August 2, 1979.[4] Wells Fargo Bank, respondent herein, was appointed administrator with the will annexed of her estate.

Appellant, who was 77 years of age, moved back to the Taraval Street flat. On January 29, 1980, he filed his verified petition for a family allowance. He stated that his income was $200 per month and his expenses were $762.50 per month. He estimated the estate income at $12,000 per year and requested an allowance of $500 per month or occupancy of the Taraval flat and $300 per month.[5]

At the hearing on the family allowance, appellant's petition and the stipulation and order on order to show cause were admitted into evidence. In his testimony, appellant admitted that he had signed the stipulation, that he had requested no support in the response filed in the dissolution proceeding, that he had received no support during the separation, and that he had filed in 1978 a married person's separate income tax return (showing gross receipts from his business of about $10,000 and a net loss of $32). On objection, the testimony of decedent's counsel in the dissolution proceedings about the intent of the parties at the time of the stipulation was stricken as conclusionary. Respondent filed a memorandum of points and authorities, and the court took the matter under submission. The court, without stating its reasons, denied appellant's petition on March 7, 1979.

Appellant contends that the court abused its discretion in denying his petition for a family allowance.

---

[4]By her will dated April 19, 1978, Mrs. Kalal made 11 specific bequests and gave the residue of her estate in equal shares to her nephew, Thomas McNutt, and her niece. She expressly omitted to provide for her daughter and for appellant. Appellant's will contest has been dismissed, and the will was admitted to probate on September 11, 1980. Wells Fargo Bank was appointed special administrator of the estate and, after dismissal of the will contest, administrator with the will annexed.

[5]Although appellant requested occupancy of the Taraval Street flat, he did not file a petition for a probate homestead pursuant to Probate Code section 661. "With regard to the rights of a surviving [spouse], the cases construing one are cited authoritatively in cases construing the other." (*Estate of Brooks* (1946) 28 Cal.2d 748, 750 [171 P.2d 724].) A determination on the right to a family allowance will be decisive on the right to a probate homestead, if requested. (*Id.*, at p. 750.)

*Discussion*

■ Probate Code section 680[6] provides that the surviving spouse is "entitled" to such reasonable allowance out of the estate of the deceased spouse as shall be necessary for the survivor's maintenance according to his or her circumstances during the settlement of the estate. This statute does not give an absolute right to a survivor who establishes the marital relationship; it is conditioned on the survivor's right to support at the time of decedent's death. (*Estate of Brooks* (1946) 28 Cal.2d 748, 755 [171 P.2d 724]; *Estate of Fallon* (1957) 49 Cal.2d 402, 404-405 [317 P.2d 963]; *Estate of Fawcett* (1965) 232 Cal.App.2d 770, 777 [43 Cal.Rptr. 160].)

The question before us, therefore, is whether appellant had the right to receive support from his deceased wife at the time of her death.

Respondent maintains that the probate court properly denied a family allowance on either of two grounds: (1) appellant was not entitled to support under Civil Code section 5131[7] since the parties were living separate by an agreement which did not provide for support, and (2) appellant waived his right to support by agreement and by his subsequent conduct. In each instance, respondent relies on the "Stipulation and Order on Order to Show Cause" as the agreement under which appellant forfeited any right to support. As authority respondent cites *Estate of Brooks, supra,* 28 Cal.2d 748, *Estate of Fallon, supra,* 49 Cal.2d 402, *Estate of Schwartz* (1947) 79 Cal.App.2d 308 [179 P.2d 868] (support precluded by waiver in antenuptial agreement), and *Estate of Zlaket* (1960) 180 Cal.App.2d 553 [4 Cal.Rptr. 450] (support precluded by waiver in executed marital settlement agreement which was not rescinded after reconciliation).

---

[6]Probate Code section 680 provides: "The surviving spouse, minor children, and adult children who are physically or mentally incapacitated from earning a living and were actually dependent in whole or in part upon the decedent for support are entitled to such reasonable allowance out of the estate as shall be necessary for their maintenance according to their circumstances, during the progress of the settlement of the estate, which, in case of an insolvent estate, must not continue longer than one year after granting letters. Such allowance must be paid in preference to all other charges, except funeral charges, expenses of the last illness and expenses of administration, and may, in the discretion of the court or judge granting it, take effect from the death of the decedent."

[7]Civil Code section 5131 provides: "A spouse is not liable for the support of the other spouse when the other spouse is living separate from the spouse by agreement unless

In *Estate of Fawcett* (1965) 232 Cal.App.2d 770 [43 Cal.Rptr. 160], the court carefully analyzed *Brooks* and *Fallon* and decided that they were not controlling where an order for support of the wife was a temporary order for a limited period and that period had expired before her husband's death. The court stated: "*Brooks* holds that a widow has no right to support from the decedent at the time of his death and therefore no right to a family allowance from his estate where an interlocutory decree of divorce then in effect makes no provision for her support. *Fallon* holds that she has no right to support and thus to a family allowance where a decree denying divorce has made provision for her support for a limited time only, such provision has expired before the husbands's death, and she had not shown in the probate court sufficiently changed circumstances occurring before the death of the husband. In each case the marriage had not been dissolved prior to the husband's death. In each case there was a judgment on the merits. . . ." (*Id.*, 232 Cal.App.2d at p. 780.) The rationale of *Brooks* is that the spouses, by virtue of the interlocutory judgment, were living separate by agreement, and if the judgment does not provide for support, Civil Code section 5131 (formerly 175) is applicable. "'The judgment has the effect of a contract for that purpose.'" (*Id.*, at p. 779.) Similarly, in *Fallon*, "'The court left the parties still married, although *separated by consent* . . . .'" (*Id.*, at p. 780, italics in original.)

■ An order for temporary support is not the equivalent of an interlocutory judgment of dissolution of the marriage since it is not an adjudication on the merits; it therefore is not "tantamount to an agreement to live separate and apart" without provision for support or with provision for support for a limited time only. (*Estate of Fawcett, supra*, 232 Cal.App.2d at p. 783.)

■ In the case before us, there is no evidence that the spouses separated prior to the order to show cause hearing. "Pendency of a divorce action does not of itself establish separation by mutual consent. Upon the principle that a judgment is a contract, an interlocutory decree of divorce may have the effect of an agreement to live separate and apart [citation] but it does not logically follow that the commencement of an action for divorce constitutes such an agreement." (*Id.*, at p. 782.)

such support is stipulated in the agreement." (See also Civ. Code, §§ 4802, 4801, subd. (b), and 4811.)

For a discussion and criticism of Civil Code section 5131, see Bruch, *The Legal Import of Informal Marital Separations: A Survey of California Law and a Call for Change* (1977) 65 Cal.L.Rev. 1015, 1027-1031.

The preliminary—or order to show cause[8]—hearing has two significant features: the court is not concerned with the merits of the action and the orders made are not res judicata. (See *Estate of Fawcett, supra,* 232 Cal.App.2d at pp. 784-785; *Weak* v. *Weak* (1962) 202 Cal.App.2d 632, 635 [21 Cal.Rptr. 9].) Its purpose is to maintain the status quo, as nearly as possible, until the trial on the merits can be set.

The nonbinding effect of support orders is articulated in Civil Code section 4357 which authorizes temporary support. Section 4357 provides in relevant part that the court may order either spouse "to pay any amount that is necessary for the support and maintenance [of the other].... An order made pursuant to this section shall not prejudice the rights of the parties... with respect to any subsequent order which may be made. Any such order may be modified or revoked at any time except as to any amount that may have accrued...." Thus, appellant's failure to request support at the preliminary hearing did not preclude his filing a subsequent motion for modification of the temporary order or his seeking permanent support at the trial on the merits. Even though an order for temporary support is requested and made, it is not determinative of the amount or duration of a permanent support order which is authorized by Civil Code section 4801.

We have in the case before us an additional fact not present in *Estate of Fawcett, supra,* 232 Cal.App.2d 770. Appellant and his wife *stipulated*[9] that the court could make a temporary order imposing mutual restraining orders and requiring appellant to vacate the family home. Their stipulation did not provide for spousal support, nor did it specifically waive or reserve either temporary or permanent support. Did appellant and decedent by this stipulation agree to live separate and to forever release each other from any liability for support? We think not for two reasons.

First, the need for decedent to seek court assistance in removing appellant from the family home evidences a lack of agreement on separation. Appellant's courtroom acquiescence to the order requested by

---

[8]An order to show cause has been held to be the equivalent of a notice of motion (*McAuliffe* v. *Coughlin* (1894) 105 Cal. 268, 270 [38 P. 730]), and the latter is often used when the adverse party has appeared in the case.

[9]Neither counsel addressed the issue whether decedent had the capacity to contract on support without the acquiescence or joinder of the conservator of her estate. Since a determination of this issue is not essential to our holding, we defer any discussion of the matter. (See generally, Cal. Conservatorships (Cont.Ed.Bar 1968) § 1.29, p. 15 et seq. and 1980 Supp.)

his wife reflected a desire to avoid a court hearing, even though brief, and a recognition that such an order would probably be made, rather than an intent to enter freely a binding agreement to live separately and waive support. A "right should not be held to have been surrendered by an agreement between the spouses 'except by clear and explicit language'" and the agreement should be "read in the light of the underlying purpose of the transaction and the circumstances under which it was made...." (*Estate of Schwartz, supra*, 79 Cal.App.2d 308, 309-310.)

Second, assuming that the spouses entered into a binding agreement to live separately and waive support, the waiver covered only temporary support and extended only until the time of trial. Nothing in the stipulation indicated a waiver of permanent support. As previously discussed, either party could move to modify the temporary order or request permanent support at the trial on the merits.

Nor did appellant's conduct during the separation constitute a waiver of the right to support, as urged by respondent. Any attempt by appellant to see the decedent or communicate with her would have amounted to a violation of the court order restraining the parties "from contacting the other at their residence or place of employment." His failure to file a motion to modify the order and seek interim spousal support was justifiably based on the financial circumstances of the parties. No evidence of income and needs was presented at the order to show cause hearing. The only evidence offered at the hearing on the family allowance was that contained in appellant's petition for the allowance. At the hearing on the petition to remove appellant as conservator, however, appellant's counsel who handled the conservatorship finances testified that decedent's gross annual income was $9,671.60 and that after normal recurring expenses she had a net of approximately $1,220 from which he sent her money when he could. It is thus obvious that during her lifetime decedent would not have had the ability to provide support for appellant. Although no support was provided to appellant for the 10 months preceding Mrs. Kalal's death, the record reflects that she had provided shelter for the parties during this 25-year marriage.

The fact that the spouses were living separate at the time of the wife's death or that the husband had been supporting himself without financial aid from the wife does not constitute a waiver of the right to support. (*Estate of Fallon, supra*, 49 Cal.2d 402, 403; *Estate of Fawcett, supra*, 232 Cal.App.2d at p. 777.)

In summary, we conclude that the mutual obligation of the spouses to support each other during the marriage (see Civ. Code, §§ 242, 5100) was not affected by their stipulation at the preliminary hearing. Although we hold in the case before us that appellant did not agree to live separately without provision for support and thus did not come within the provisions of Civil Code section 5131, other cases must be determined by the circumstances unique to each particular case. There may be instances where the probate court can clearly find that the parties intended by their agreement to separate and permanently waive spousal support. It is a factual issue within the province of the probate court and will be reversed only on a showing of abuse of discretion.

We hold that the probate court abused its discretion in denying appellant an allowance from his deceased wife's estate. Unfortunately, the court stated no reasons for its ruling,[10] but it apparently relied on the holdings in *Estate of Brooks* and *Estate of Fallon, supra*, which we have found not applicable.

Probate Code section 680 provides that a surviving spouse is "entitled to such reasonable allowance...as shall be necessary for [his] maintenance according to [his] circumstances...." The fact that appellant may have property or income of his own is not a basis for denial of a family allowance, but is relevant on the issues of necessity for and reasonableness of an allowance. (*Estate of Fawcett, supra*, 232 Cal.App.2d at pp. 787-788.) On retrial, the probate court should consider these factors; no showing of changed circumstances since the time of the preliminary hearing, however, is required. (*Id.*, at p. 788.)

The order is reversed.

White, P. J., and Feinberg, J., concurred.

On August 21, 1981, the opinion was modified to read as printed above.

---

[10]In fairness to the trial court, we note that appellant did not file a memorandum of points and authorities. He did not call to the attention of the lower court, or even of this court, the holding in *Estate of Fawcett, supra*, 232 Cal.App.2d 770. At the hearing, he relied on his verified petition and the wording of Probate Code section 680 which on its face is unconditional.