[S. F. No. 2058.  Department One.—May 14, 1902.]

## SARAH A. HATTON, Appellant, v. WILLIAM HATTON, Respondent.

DIVORCE—EXTREME CRUELTY—FINDINGS AGAINST DIVORCE—REVIEW UPON APPEAL—DISCRETION.—Extreme cruelty as a ground of divorce is largely a question of fact, to be determined by the trial court; and its findings thereon will not be disturbed upon appeal, unless the evidence in support of them is so slight as to indicate a want of good judgment and an abuse of discretion of the trial court. This rule is particularly applicable when the findings are against a divorce.

ID.—POLICY OF LAW.—The policy of the law is against severing the marriage relation on slight ground or for trivial causes.

ID.—REFUSAL TO GRANT DIVORCE—APPEAL.—To justify a reversal of the trial court in refusing to grant a divorce, the record upon appeal should show a great preponderance of evidence against the findings.

ID.—APPEAL FROM JUDGMENT—LAPSE OF TIME—DISMISSAL.—This court has no jurisdiction of an appeal from a judgment of divorce taken after the lapse of the time allowed for such appeal, and an appeal so taken must be dismissed.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial.  A. S. Kittredge, Judge.

The facts are stated in the opinion of the court.

J. C. Black, for Appellant.

F. J. Hambly, and J. B. Kerwin, for Respondent.

VAN DYKE, J.—This is an action for divorce.

The appeal from the judgment in this case was taken long after the time allowed by law for taking such appeal, and hence cannot be considered, as this court never acquired jurisdiction thereof.

The main contention on the appeal from the order denying plaintiff's motion for a new trial is, that the findings against her in favor of the defendant are not supported by the evidence.

The parties were married in Canada, it appears, in 1868, and after coming to this state, they settled at San José, in Santa Clara County.  In 1888 the husband went to Porter-

ville, Tulare County, in search of better employment, and there succeeded in finding business in his trade as a wagon-worker. When he went he left money for his wife for family use, and came back on a visit in a few months, and on his return to Porterville started a carpenter-shop of his own, and succeeded quite well in business there. The plaintiff admits that her husband did better by going to Porterville than San José, and in her complaint herein alleges that the property he had accumulated there, up to the time of bringing the action, was of the value of about twenty thousand dollars. She also admits that during all this time he contributed towards the support of the family. After he was located in business at Porterville he often visited his family in San José, and his wife also at different times went to stop with him a while at Porterville. When she returned from one of these visits she received a letter, in August, 1891, in which he stated she had communicated a venereal disease to him. She replied to this letter, making a counter-charge that he had been untrue to her. It appears, however, from the testimony of physicians introduced by the respective parties, that neither had the venereal disease; so they both were mistaken as to that. The parties, however, continued to exchange visits back and forth, maintaining the relation of husband and wife, and kept up a frequent correspondence. At one time, in 1893, when advised by his wife that their boy was dangerously ill, he started immediately, and arrived at San José just before he died. Thereafter he urged her to leave San José and go to live with him. In his testimony he says: "After the death of the boy I tried to get her to give up the lodging-house and come with me to Porterville, but she seemed to say that she could not leave the grave of the boy, and that she would prefer living here for a while, and that was her excuse for not going there. I asked her frequently, both by letter and in our conversation. I would try to persuade her to come to Porterville and give up the lodging-house. I never asked her to go prior to 1893. I did not do so because I didn't want to take the boy out of school here and take him to Porterville, where there was no such facilities for school." Their married daughter was with the mother at Porterville on many of these visits, and was stopping there at the time the suit was commenced.

The appellant relies upon extreme cruelty, adultery, and desertion as grounds for the divorce, but has abandoned the charge made in the complaint, of failure to provide. The ground, however, upon which the greatest stress is laid by appellant is that of the alleged extreme cruelty. There is no pretense of any bodily injury, but it is claimed defendant inflicted upon plaintiff grievous mental suffering, and this grievous mental suffering is predicated upon the letter referred to of August, 1891. The plaintiff testifies in reference to this: "When I received that letter in 1891, I was sick for three or four days. I did not call in a doctor." She acknowledges at the same time they had frequent correspondence after that, and in speaking of the letters between herself and husband, says: "Some of them were sociable and friendly, and some of them were not. We did not quarrel very much in letters"; but admits that they had visited and lived and stopped with each other, cohabiting as husband and wife after that, as already stated.

In the fall of 1897, the respondent had occasion to make a trip to Canada, and just before leaving was at San José preparing for the trip. Plaintiff testifies: "When he was preparing to make the trip to Canada I went around town with him and assisted him in making purchases for his trip. I never indicated to him that my feelings had grown so unfriendly that I was going to seek a divorce at any time during his stay with me. I don't know whether I had made up my mind to procure a divorce from him before he went away or not. Before he started for Canada we discussed an arrangement between us whereby he was to stay at my house all through the winter. . . . I did not make any counter proposition." Again she says: "This suit was commenced very soon after he went away. The parting between myself and Mr. Hatton was reasonably friendly when he started for Canada." In reference to the alleged extreme cruelty, it was said in *Andrews* v. *Andrews,* 120 Cal. 185, the case relied upon by appellant, that extreme cruelty is largely a question of fact to be determined by the trial court; "its findings thereupon cannot be disturbed on appeal, unless the evidence in support of them is so slight as to indicate a want of ordinary good judgment and an abuse of discretion by the trial

court.'' Particularly does this rule apply when the finding is against a divorce.

The marriage relation is the foundation of all society, and is not to be severed on slight ground or for 'trivial causes; the policy of the law, therefore, is against granting divorces. Unlike other cases, in an action for divorce judgment cannot be rendered for the plaintiff on the default of the defendant, even upon a verified complaint; nor can it be granted upon the uncorroborated statement, admission, or testimony of the parties. To justify a reversal of the trial court in refusing to grant a divorce, the record should show a great preponderance of evidence against the findings, and such is not the case here. On the contrary, the court would not have been justified in granting a divorce on the showing made as to any of the grounds mentioned. The alleged errors complained of are not of such material nature as to merit consideration.

The appeal from the judgment is dismissed, and the appeal from the order denying a new trial is affirmed.

Garoutte, J., and Harrison, J., concurred.

Hearing in Bank denied.